UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **DWAIN KING** | : | CIVIL ACTION NO. |
|     Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| **A BETTER WAY WHOLESALE AUTOS, INC.** | : | |
| **and WELLS FARGO BANK, N.A.** | : | |
|     Defendants | : | MAY 26, 2017 |

## COMPLAINT

### INTRODUCTION AND JURSDICTIONAL ALLEGATIONS

1. This is a suit brought by a consumer against A Better Way Wholesale Autos, Inc. ("ABW") for violations of the Truth in Lending Act ("TILA") 15 U.S.C. §§ 1601 *et seq.*, the Magnuson-Moss Warranty Act 15 U.S.C. §§ 2301 *et seq.*, and for pendent state law claims under Article 2 of the Connecticut Uniform Commercial Code, Conn. Gen. Stat. §§ 42a-2-101 *et seq.*, the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. §§ 42-110a *et seq*. Plaintiff alleges breach of express warranty, breach of the implied warranty of merchantability, unjust enrichment, fraudulent misrepresentation, negligent misrepresentation and negligent repair against ABW.  Plaintiff also has claims against Wells Fargo Bank, N.A. ("Wells Fargo"), the assignee of the retail installment contract.

2. Plaintiff, Dwain King ("Plaintiff") is a natural person residing in Gloversville, New York.

3. ABW is a Connecticut limited liability corporation that operates an automobile dealership in Naugatuck, Connecticut.

4. Wells Fargo is a national bank with headquarters in San Francisco, CA.

5. Jurisdiction in this Court is proper pursuant to 15 U.S.C. § 1640(e), 28 U.S.C. § 1331, and 15 U.S.C. § 2310(d)(1)(B).

6. This Court has jurisdiction over ABW because it is organized under the laws of this state and regularly conducts business in this state.

7. This Court has jurisdiction over Wells Fargo because it regularly conducts business in this state by accepting assignment of retail installment sales contracts from Connecticut motor vehicle dealerships.

8. Venue in this Court is proper because ABW is a Connecticut, the transaction alleged herein occurred in this state.  Plaintiff was a Connecticut resident at the time of said transaction.

## ALLEGATIONS OF FACT

9. On or about May 20, 2016, Plaintiff traveled to ABW to shop for a used vehicle.

10. While there he observed a 2011 BMW 550i (the "Vehicle").

11. ABW representative Antonio Clark, told that the Vehicle was scheduled to have a component known as a right lower control arm repaired, but was otherwise in excellent condition and free of defects.

12. On or about May 27, 2016, Plaintiff returned to ABW and discovered that the Vehicle was still available.  Plaintiff again met ABW representative Antonio Clark and asked whether the repair they previously discussed had been made.  Mr. Clark indicated that the control arm had been fully repaired and reiterated that the Vehicle was in excellent condition.

13. Plaintiff provided a $6,500 down payment and purchased the Vehicle pursuant to a purchase order and a retail installment contract (the "Contract") prepared by ABW.  The Vehicle's cash price was $20,995 and its total cash price, following the addition of various fees, taxes and costs was $27,287.47.

14. The retail installment contract included a $2,988.00 charge for an extended service contract with Continental Warranty, Inc.

15. ABW sold the Vehicle to Plaintiff with an express warranty that provided:

> THIS MOTOR VEHICLE IS GUARANTEED for 60 Days or 3,000 miles whichever comes first.  The dealer will pay 100% of the labor and 100% of the parts for the covered systems which renders the vehicle mechanically operational and sound during the warranty period

16. At all times relevant to this complaint, Plaintiff used the Vehicle for the intended purposes for which it had been designed, manufactured and sold.

17. Within one week of delivery, the Vehicle's drivetrain began to malfunction.  The Vehicle began bucking and Plaintiff observed a warning light displayed on the information console indicating a drivetrain malfunction.  These problems quickly led to the Vehicle stalling on the side of the road in upstate New York.

18. Plaintiff notified ABW of the Vehicle's problems and paid approximately $1,500 to have the Vehicle towed back to ABW for repair on or about June 2, 2016.

19. ABW determined that the Vehicle had an engine knock and observed that the engine had a spun rod bearing which required that the entire engine be replaced.  ABW also determined that the Vehicle's oil cooler lines were defective and needed to be replaced.

20. Oil cooler lines play an important role in protecting an engine by preventing engine oil from becoming too hot.  At high temperatures, motor oil thins out and provides less protection to internal engine parts such as rod bearings.

21. ABW installed a used engine in the Vehicle, repaired the Vehicle's heating, ventilation and air conditioning system ("HVAC") and replaced the defective oil cooler lines.

22. The repairs cost $9,058.47 and were covered by the Vehicle's 60-day/3,000-mile express written warranty.

23. Instead of paying 100% of the repairs as required by the express warranty, ABW wrongfully used Plaintiff's extended service policy to cover the costs of parts and its own labor,

thereby unjustly enriching itself and harming the Plaintiff by reducing the amount of remaining policy coverage available to him.  As a result of ABW's actions, Plaintiff was forced to incur significant out-of-pocket costs for Vehicle repairs.

24. ABW had the Vehicle in for repair for 43 days, returning it to Plaintiff on or about July 15, 2016.

25. Shortly after receiving the returned Vehicle, and within the coverage period of the express warranty, Plaintiff contacted ABW and notified it that the Vehicle was still experiencing problems and displaying the same symptoms it showed directly before the engine was replaced.

26. On August 15, 2016, Plaintiff returned the Vehicle to ABW for further diagnosis and repair.

27. ABW kept the Vehicle for 94 days before returning it to Plaintiff on November 17, 2016. Upon its return, Plaintiff noticed that valuable personal items that had been in the car, including an iPhone, leather bag and a stethoscope he uses for work were now missing.

28. ABW stated that it conducted extensive repairs on the Vehicle during that time, including but not limited to installing another used engine, digital motor electronics system, transmission mount, oil filter, spark plug, auxiliary water pump, battery and boost pressure sensor.  ABW stated it bled the Vehicle's cooling system, hydraulic rack and sway bar system.  ABW reported having programmed fuel injector flow rates, reset all adaptive technology, replaced the cam sensor and cleaned the mass air flow component.  ABW further stated it took certain components from the second engine and installed them in the new, third, engine.

29. When ABW returned the Vehicle, Plaintiff noticed that it still displayed signs of mechanical problems.

30. On or about November 21, 2016, the drivetrain error warning appeared while Plaintiff was driving.  Plaintiff drove the Vehicle directly to the nearest authorized BMW dealership, New Country Motors in Hartford, CT.

31. New Country Motors inspected the Vehicle found significant problems with the Vehicle's engine and electrical system.

32. The technician conducting the inspection fault codes for the "bank 2 exhaust vanos solenoid" and for the Vehicle's Bit-Serial Data Interface.  In addition, he noticed that the alternator was operating at only minimum power.  The technician indicated in his inspection report that the Vehicle's engine and certain electronics may have been damaged by the installation of incorrect parts in previous attempts at engine repair.

33. Plaintiff notified ABW of the problems identified by New Country Motors within the express warranty's coverage period.  He asked that ABW repair the problems.

34. ABW told Plaintiff it could not begin any repair work for one to two months.

35. Plaintiff asked ABW to pay for New Country Motors to make the repairs. ABW refused and Plaintiff was forced to pay for the repairs himself.

36. Despite demand, ABW has failed and/or refused to repair defects and nonconformities covered by warranty that render the Vehicle unable to be operated for all of its intended utilities.

37. The Vehicle contains defects to equipment and components that ABW was required to inspect before offering the Vehicle for sale pursuant to Conn. Gen. Stat. § 14-62(g).

38. ABW knew or should have known of the damage to the Vehicle at the time of sale because the Vehicle's defects would be apparent and obvious to any automotive professional reasonably conducting the safety inspection Connecticut law requires.

39. Plaintiff accepted the Vehicle because he was unaware of any defects and because he relied on ABW's representations about the quality and condition of the Vehicle.

40. As a result of the substantial damage, Plaintiff has lost the use of the Vehicle. He has incurred substantial inspection and repair costs as well significant expenses for securing alternate transportation, and he has experienced difficulty attending his work as a traveling nurse, causing him to lose shifts and income.

41. Wells Fargo, through its subsidiary, Wells Fargo Dealer Services Inc., was the assignee of the retail installment contract and, under its terms, was liable to Plaintiff for the amount he has paid.

42. Pursuant to Conn. Gen. Stat. § 52-572g, Plaintiff has made a prior written demand to ABW which made Wells Fargo liable to Plaintiff for his damages for an additional amount that included the unpaid balance due under the Contract as of the date that Plaintiff asserted claims against Wells Fargo.

**COUNT ONE – TRUTH IN LENDING ACT**

43. Plaintiff hereby incorporates paragraphs 1 through 42 as if fully set forth herein.

44. TILA and its implementing regulation, Regulation Z, require that certain material disclosures be provided to a consumer before completion of a loan contract. 15 U.S.C. § 1638(a)-(b), 1026.18. These material disclosures include the finance charge and annual percentage rate ("APR").

45. In the course of extending closed-end credit, ABW failed to provide accurate disclosures of financial information required by TILA and Regulation Z to the Plaintiff.

46. ABW provided Plaintiff an inaccurate annual percentage rate ("APR") on Plaintiff's purchase order, retail installment contract and invoice.

47. ABW stated that the APR was 17.99%. Based on the terms of the purchase, the APR was actually 18.29%.

48. The 0.3% difference between the stated and actual APR exceeds one-eighth of one percent in violation of 15 U.S.C. § 1606(c).

49. The aforementioned TILA violations constitute errors that are apparent on the face of the Plaintiff's retail installment contract.

50. Plaintiff has been harmed by ABW's TILA violations because inaccurate disclosures underrepresented the true cost of credit and increased the cost of the Vehicle.

51. For its violations of TILA, ABW is liable to Campbell for double the finance charge, capped at $2,000.00, plus a reasonable attorney's fee.

52. Wells Fargo is liable for the aforementioned TILA violations pursuant to the terms of the retail installment contract and by operation of Conn. Gen. Stat. §52-572.

## COUNT TWO - MAGNUSON-MOSS WARRANTY ACT

53. Plaintiff hereby incorporates paragraphs 1 through 52 as if fully stated herein.

54. The Vehicle is a "consumer product" pursuant to 15 U.S.C. § 2301(1).

55. Plaintiff is a "consumer" pursuant to 15 U.S.C. § 2301(3).

56. ABW is a "supplier" pursuant to 15 U.S.C. § 2301(4), "warrantor" pursuant to 15 U.S.C. § 2301(5) and "service contractor" pursuant to 15 U.S.C. § 2301(8).

57. ABW provided written warranties to Plaintiff in connection with his lease of the Vehicle, which became part of the basis of the bargain in the purchase.

58. The Magnuson-Moss Warranty Act (the "MMWA") binds warrantors to all warranties implied by state law in addition to those provided for in private transactions and requires

7

warrantors to remedy any defect, malfunction or nonconformance within a reasonable time and without charge to the Plaintiff.

59. The provisions of the MMWA implicate and enhance all rights and remedies available under the Connecticut Uniform Commercial Code.

60. A warranty that the Vehicle was merchantable at the time of sale was implied in the contract by operation of Conn. Gen. Stat. § 42a-2a-504.

61. The Vehicle was not in merchantable condition at the time of sale because it would not pass in trade without objection, because it was not fit for the ordinary purposes for which vehicles are used, or both.

62. A violation of the Connecticut UCC within a consumer transaction also constitutes a violation of the MMWA, and entitles the prevailing consumer to damages, costs and attorneys' fees pursuant to 15 U.S.C. § 2310(d)(2).

63. By the terms of ABW's oral and written warranties, affirmations and promises regarding the Vehicle, ABW agreed to provide Plaintiff with a reliable vehicle and to perform effective repairs on the Vehicle at no charge to Plaintiff.

64. ABW had a reasonable opportunity to repair the Vehicle's defects and nonconformities, but failed to do so.

65. ABW failed to honor the express and implied warranties owed to Plaintiff either under its own warranties or those constructed by Connecticut law.  As a result, ABW violated the MMWA.

66. As a direct and proximate result of defendant's failure to comply with implied and express warranties, Plaintiff has suffered damages and is entitled to bring an action for legal and equitable relief pursuant to 15 U.S.C. § 2310(d)(1).

## COUNT THREE – CONNECTICUT UNFAIR TRADE PRACTICES ACT

67. Plaintiff hereby incorporates paragraphs 1through 66 as if fully set forth herein.

68. ABW has engaged in unfair acts and practices in trade or commerce in violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a *et seq.* in connection with the transaction as follows:

   a. It failed to accurately disclose the APR in violation of TILA;

   b. It failed to complete a comprehensive safety inspection of the Vehicle before offering it for retail sale, or if it did conduct a safety inspection, it sold the Vehicle notwithstanding the defects, in violation of Conn. Gen. Stat. § 14-62(g), and a *per se* violation of CUTPA pursuant to Conn. Agency Reg. § 42-110b-28(b)(23);

   c. It sold Plaintiff a vehicle that was not fit for its ordinary purpose or in condition for legal operation on Connecticut roads in violation Conn. Gen. Stat. § 14-62(g), and a *per se* violation of CUTPA pursuant to Conn. Agency Reg. § 42-110b-28(b)(23);

   d. It failed to provide written disclosure of unrepaired defects in violation of Conn. Gen. Stat. § 14-62(g), and a *per* se violation of CUTPA pursuant to Conn. Agency Reg. § 42-110b-28(b)(23);

   e. It breached an express warranty to cover one hundred percent of the costs of parts and labor for repairs of defects of which they were notified during the warranty period in violation of Conn. Gen. Stat. § 42-222, and a *per* se violation of CUTPA pursuant to Conn. Agency Reg. § 42-110b-28(b)(23);

   f. It failed to complete Vehicle repairs in a reasonable manner within a reasonable time.

69. As a result of the aforedescribed conduct, ABW is liable to Plaintiff for his damages, punitive damages, and costs and attorney's fees.

70. Plaintiff also seeks as an equitable remedy, an order that the purchase is rescinded and that ABW be permitted to retrieve the Vehicle upon payment of the amounts paid by Plaintiff.

### COUNT FOUR - FRAUDULENT MISREPRESENTATION

71. Plaintiff hereby incorporates paragraphs 1 through 70 as if fully set forth herein.

72. ABW has made false and fraudulent representations to Plaintiff regarding the Vehicle.

73. Specifically, ABW misrepresented the existence, nature and extent of defects present in the Vehicle at the time of sale.

74. ABW made untrue statements about having repaired the Vehicle's defects.

75. ABW knew or should have known that the aforementioned representations were false and it made them with the intent that the Plaintiff rely on them.

76. The Plaintiff justifiably relied on ABW's representations and as a result, he has suffered significant harm, including but not limited to purchasing a car that was not roadworthy, worth substantially less than he bargained for and which he has been forced to spend significant amounts of money repairing and securing alternate transportation.

77. ABW is liable for Plaintiff's damages, including common law punitive damages.

### COUNT SIX – NEGLIGENT MISREPRESENTATION

78. Plaintiff hereby incorporates paragraphs 1 through 77 as if fully set forth herein.

79. ABW has made false representations to the Plaintiff regarding the Vehicle.

80. Specifically, ABW misrepresented the existence, nature and extent of defects present in the Vehicle at the time of sale.

81. ABW made untrue statements about having repaired the Vehicle's defects.

82. ABW knew or should have known that the aforementioned representations were false and it made them with the intent that the Plaintiff rely on them.

83. The Plaintiff justifiably relied on ABW's representations and as a result, he has suffered significant harm, including but not limited to purchasing a car that was not roadworthy, worth substantially less than he bargained for and which he has been forced to spend significant amounts of money repairing and securing alternate transportation.

84. ABW is liable for Plaintiff's damages.

85. Because the representations were made with a reckless indifference to Plaintiff's rights, ABW is also liable for common law punitive damages.

## COUNT SEVEN – NEGLIGENT REPAIR

86. Plaintiff hereby incorporates paragraphs 1 through 85 as if fully set forth herein.

87. ABW had a duty to make repairs on Plaintiff's Vehicle in a workmanlike manner.

88. ABW breached this duty by failing to exercise due care in identifying and repairing defects that were present in the Vehicle, and by installing engine components that were not appropriate for the make and model of the Vehicle.

89. As a result of ABW's breach, the Plaintiff has suffered significant damages, including but not limited to purchasing a car that was not roadworthy, worth substantially less than he bargained for and which he has been forced to spend significant amounts of money repairing and securing alternate transportation.

90. ABW is liable for Plaintiff's damages, including common law punitive damages.

WHEREFORE, the Plaintiff seeks actual damages, statutory damages, common law punitive damages, statutory punitive damages, an order rescinding the sale, attorney's fees and costs.

PLAINTIFF, DWAIN KING

By: /s/ Jesse C. Clark
Jesse C. Clark, ct27448
Churchill Law Group, LLC
543 Prospect Avenue
Hartford, CT 06105
Tel. (860) 836-7881
Fax (860) 236-2234
Jcclark.law@outlook.com